**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **The Bronx Defenders,** *et al.,* <br><br><br>                      **Plaintiffs,** <br><br> **v.** <br><br> **Hon. Anne-Marie Jolly**, *et al.* <br><br>                      **Defendants.** | **No. 26-cv-4875** |

**MEMORANDUM IN SUPPORT OF
MOTION FOR INDVIDIUAL PLAINTIFFS
TO PROCEED ANONYMOUSLY**

# TABLE OF CONTENTS

Page

BACKGROUND ................................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.      Factor 1: This Litigation Involves Highly Sensitive and Personal Information and Risks Stigmatizing Plaintiffs and Harming Their Children ................................................. 3

II.     Factors 2 and 3: Exposing Plaintiffs' Identities Risks Inflicting the Injury Plaintiffs Seek to Avoid, Including Urination in Front of Strangers and Public Shaming ................. 6

III.    Factor 4: Exposing Plaintiffs' Identities Would Undermine Privacy of Their Minor Children ............................................................................................................................ 9

IV.     Factor 5: Government Defendants Have Minimal Concern for Reputational Harm ......... 10

V.      Factor 6: Defendants May Access Plaintiffs' Identities Through Discovery ..................... 11

VI.     Factor 7: Plaintiffs' Identities Have Been Kept Confidential ........................................... 11

VII.    Factors 8 and 9: There is No Public Interest in Disclosure .............................................. 12

VIII.   Factor 10: There Are No Alternative Mechanisms for Protecting Plaintiffs' Confidentiality ................................................................................................................. 13

CONCLUSION ................................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.C. v. United Healthcare, Inc.*,
  No. 26-cv-3160, 2026 WL 1243329 (S.D.N.Y. May 6, 2026) ............................................6, 12

*Doe 1 v. Starpoint Cent. Sch. Dist.*,
  No. 23-cv-207, 2023 WL 2752509 (W.D.N.Y. Apr. 3, 2023)...................................................9

*Doe No. 2 v. Kolko*,
  242 F.R.D. 193 (E.D.N.Y. 2006) ....................................................................................10, 11

*Doe v. Cigna Health & Life Ins. Co.*,
  No. 25-cv-7021, 2026 WL 21823 (S.D.N.Y. Jan. 2, 2026) ....................................................6

*Doe v. Colgate Univ.*,
  No. 15-cv-1069, 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016) ..........................................4, 8

*Doe v. Combs*,
  No. 24-cv-7973, 2025 WL 1744928 (S.D.N.Y. June 23, 2025) ..............................................12

*Doe v. Cuyahoga Cnty.*,
  No. 22-cv-01677, 2025 WL 2771526 (N.D. Ohio Sept. 29, 2025) .........................................4

*Doe v. Del Rio*,
  241 F.R.D. 154 (S.D.N.Y. 2006) ........................................................................................6, 12

*Doe v. Frank*,
  951 F.2d 320 (11th Cir. 1992) ................................................................................................4

*Doe v. Gooding*,
  No. 20-cv-06569, 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022) ..........................................11

*Doe v. Ithaca City Sch. Dist.*,
  No. 25-cv-806, 2025 WL 3157792 (N.D.N.Y. Nov. 12, 2025).................................................13

*Doe v. Kogut*,
  No. 15-cv-07726, 2017 WL 1287144 (S.D.N.Y. Apr. 6, 2017) ..............................................6

*Doe v. Salina*,
  No. 23-cv-3529, 2024 WL 1259362 (E.D.N.Y. Mar. 25, 2024)...........................................6, 9

*Doe v. Smith*,
  105 F. Supp. 2d 40 (E.D.N.Y. 1999) ...................................................................................8, 11

ii

*Doe v. Solera Cap. LLC*,
 No. 18-cv-1769, 2019 WL 1437520 (S.D.N.Y. Mar. 31, 2019)................................................6

*Doe v. St. Vincent's Servs., Inc.*,
 No. 20-cv-6215, 2021 WL 7909266 (E.D.N.Y. Sept. 29, 2021) ..............................................8

*Does 1-2 v. Hochul*,
 No. 21-cv-5067, 2022 WL 836990 (E.D.N.Y. Mar. 18, 2022)..................................................6

*EW v. N.Y. Blood Ctr.*,
 213 F.R.D. 108 (E.D.N.Y. 2003) .......................................................................................10, 12

*Freedom from Religion Found., Inc. v. Connellsville Area Sch. Dist.*,
 No. 12-cv-1406, 2013 WL 2296075 (W.D. Pa. May 24, 2013) ..............................................10

*Gould v. City of New York*,
 No. 24-cv-01263 (E.D.N.Y. Sept. 9, 2024), Dkt. No. 50 .........................................................3

*Horowitz v. Peace Corps.*,
 428 F.3d 271 (D.C. Cir. 2005) ...............................................................................................13

*Jane Doe Esq. v. The Legal Aid Soc'y*,
 No. 25-cv-2409, 2026 WL 880401 (S.D.N.Y. Mar. 31, 2026)..................................................6

*Javier H. v. Garcia-Botello*,
 211 F.R.D. 194 (W.D.N.Y. 2002)............................................................................................12

*John Doe Co. v. Consumer Fin. Prot. Bureau*,
 321 F.R.D. 31 (D.D.C. 2017)..................................................................................................12

*Malibu Media, LLC v. Doe*,
 No. 15-cv-1862, 2015 WL 4271825 (S.D.N.Y. July 14, 2015)...............................................12

*MM v. Mayorkas*, No. 24-cv-02090 , 2024 WL 1795766 (S.D.N.Y. Apr. 25, 2024).......................3

*of Doe No. 1 v. Nygard*,
 No. 20-cv-6501, 2020 WL 4890427 (S.D.N.Y. Aug. 20, 2020)..............................................11

*P.M. v. Evans-Brant Cent. Sch. Dist.*,
 No. 08-cv-168A, 2008 WL 4379490 (W.D.N.Y. Sept. 22, 2008).............................................9

*Plaintiffs # 1-21 v. Cnty. of Suffolk*,
 138 F. Supp. 3d 264 (E.D.N.Y. 2015) ...............................................................................10, 11

*R.F.M. v. Nielsen*,
 365 F. Supp. 3d 350 (S.D.N.Y. 2019)................................................................................3, 4, 11

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
 253 F.3d 678 (11th Cir. 2001) ................................................................................................11

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir. 2008)............................................................................2, 3, 12

*Smith v. Edwards*,
    175 F.3d 99 (2d Cir. 1999)........................................................................................9

*V.S. v. Muhammad*,
    595 F.3d 426 (2d Cir. 2010) ....................................................................................3

*Valmonte v. Bane*,
    18 F.3d 992 (2d Cir. 1994).................................................................................3, 4

**Statutes**

N.Y. Fam. Ct. Act § 166 .......................................................................................4, 11

**Other Authorities**

Drug & Alcohol Reps. 100386, at 5 (2025), https://pmc.ncbi.nlm.nih.
    gov/articles/PMC12547762/pdf/main.pd ................................................................5

*Family Members' Perspectives on Child Protection Services, a Metasynthesis of
    the Literature*, 128 Children & Youth Servs. Rev. 106094, at 9 (2021),
    https://doi.org/10.1016/j.childyouth.2021.106094................................................5

Fed. R. Civ. P. 5.2(a)(3)...........................................................................................4

Fed. R. Civ. P. 10(a) ...............................................................................................2

New York State Law Reporting Bureau, *New York Law Reports Style Manual* ............................4

N.Y. State Off. of Children & Fam. Servs.: Child Welfare and Community
    Services, https://ocfs.ny.gov/programs/cwcs/hears.php ..........................................5

**BACKGROUND**

Plaintiffs 1 and 2, along with organizational Plaintiff The Bronx Defenders, filed this action to enjoin a courthouse drug testing program scheduled to begin in New York City Family Court on June 22, 2026. There is a high risk that family court judges will use this program to coerce parents who appear for proceedings in family court to consent to on-the-spot drug testing. Plaintiffs seek to enjoin the courthouse drug testing program because it poses a high risk of drug testing without valid consent in violation of the Fourth Amendment, and chilling parents' access to court in violation of the First Amendment. The facts supporting the Plaintiffs' claims are detailed in the memorandum in support of their preliminary injunction motion, Dkt. No. 4.[1] The individual Plaintiffs seek to proceed anonymously.

Each individual Plaintiff is the subject of an active child protective case alleging that they neglected their children, and each individual Plaintiff has had a child removed from their care. Pl. 1 Decl., Ex. 13 ¶¶ 3, 6, Dkt. No. 4-27; Pl. 2 Decl., Ex. 14 ¶¶ 3, 7, Dkt. No. 4-28. Further, each individual Plaintiff would feel coerced into drug testing if a judge asked them to test when they appeared in court seeking return of their children. Pl. 1 Decl. ¶¶ 7–10, 13; Pl. 2 Decl. ¶¶ 11–13. Neither of the plaintiffs has spoken publicly about having a family court case or this case on any social media or press platforms, Pl. 1 Decl. ¶ 14; Pl. 2 Decl. ¶ 15, and each individual Plaintiff filed this lawsuit anonymously.

The individual Plaintiffs' need for anonymity outweighs any interest in disclosure of their identities. Neglect allegations are highly sensitive and personal, and even if no finding of neglect has been made, both the individual Plaintiffs and their children face the significant stigma of

---

[1] All citations to declarations and exhibits in this brief refer to declarations and exhibits to the preliminary injunction motion, Dkt. No. 4.

involvement in the child protective proceedings. These two factors, along with the other factors the court may consider, warrant anonymity for the individual Plaintiffs.

## ARGUMENT

While the Federal Rules of Civil Procedure generally require a complaint to name all parties, Fed. R. Civ. P. 10(a), plaintiffs may proceed anonymously when "the plaintiff's need for anonymity" outweighs "the countervailing interests in full disclosure." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). The Second Circuit has approved ten non-exhaustive factors for district courts to consider:

(1)    whether the litigation involves matters that are highly sensitive and of a personal nature;

(2)    whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or, even more critically, to innocent non-parties;

(3)    whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

(4)    whether plaintiff(s) are particularly vulnerable to the possible harms of disclosure particularly in light of their age;

(5)    whether the suit is challenging the actions of the government or that of private parties;

(6)    whether defendant(s) are prejudiced by allowing plaintiff(s) to press their claims anonymously, whether the nature of the prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7)    whether the plaintiffs' identities have thus far been kept confidential;

2

(8)     whether the public's interest in the litigation is furthered by requiring plaintiff(s) to disclose their identities;

(9)     whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10)    whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff(s).

*Sealed Plaintiff*, 537 F.3d at 189–90 (citations omitted); *see also MM v. Mayorkas*, No. 24-cv-02090, 2024 WL 1795766, at *2 (S.D.N.Y. Apr. 25, 2024) (stating that no one factor is dispositive and that courts need only consider the relevant factors). Each of the ten factors weighs in favor of anonymity for the plaintiffs, and none of the factors weighs in favor of publication.

## I.     Factor 1: This Litigation Involves Highly Sensitive and Personal Information and Risks Stigmatizing Plaintiffs and Harming Their Children

Factor one weighs heavily in favor of anonymity. As is true of all family court litigants, the individual Plaintiffs are not publicly identified on the family court docket. Identifying the Plaintiffs poses a risk similar to being publicly "brand[ed ] as a child abuser," which, as the Second Circuit has recognized, "certainly calls into question [their] good name, reputation, honor, or integrity." *Valmonte v. Bane,* 18 F.3d 992, 1000 (2d Cir. 1994) (citation and quotation marks omitted). Moreover, this action concerns "facts supporting [] findings of abuse, neglect, and abandonment," which "are highly sensitive." *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 371 (S.D.N.Y. 2019) (finding first factor weighed in favor of allowing plaintiffs who had been victims of abuse, neglect, or abandonment to proceed anonymously); *see, e.g., V.S. v. Muhammad*, 595 F.3d 426 (2d Cir. 2010) (in Section 1983 case relating to allegations of abuse in family court, plaintiffs proceeded under pseudonym); Order Granting Mot. for Protective Order, *Gould v. City of New York*, No. 24-cv-01263 (E.D.N.Y. Sept. 9, 2024), Dkt. No. 50 (granting

anonymity to class representatives alleging Fourth Amendment violations by child welfare authorities).

The intensely sensitive nature of child abuse and neglect proceedings is reflected in the law. The Federal Rules require redaction of any child's name to their initials, Fed. R. Civ. P. 5.2(a)(3), and the New York child welfare scheme recognizes the need for anonymity related to these types of proceedings. The Family Court Act prohibits "indiscriminate public inspection," N.Y. Fam. Ct. Act § 166, and in abuse and neglect proceedings, "the names of the individual parties should not be published" by the New York State Law Reporting Bureau, *New York Law Reports Style Manual*, Rule 12.4(a)(2)(b) (2022), https://www.nycourts.gov/Reporter/files/2022-SM.pdf. *See R.F.M.*, 365 F. Supp. 3d at 371 (citing sensitive treatment under Family Court Act and Federal Rules of Civil Procedures as reasons supporting anonymity).

Child abuse and neglect cases are sensitive due to their subject matter, but also due to the "social stigma" attached to parent-respondents, which further supports anonymity. *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (recognizing "stigma" attached to mental illness, homosexuality, and trans identity supports anonymity (internal citations omitted)); *see Doe v. Colgate Univ.*, No. 15-cv-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (holding "courts across the country" permit anonymity in cases concerning investigation of sexual assault). Here, there is a clear stigma associated with allegations of child neglect, which, similar to allegations of child abuse, "certainly calls into question [their] good name, reputation, honor, or integrity." *Valmonte,* 18 F.3d 992, 1000 (2d Cir. 1994) (citation and quotation marks omitted); *see Doe v. Cuyahoga Cnty.*, No. 22-cv-01677, 2025 WL 2771526, at *8 (N.D. Ohio Sept. 29, 2025) ("This district has held, without question, a label of child neglect or child abuse carries stigma." (cleaned up)).

4

Social stigma is frequently connected to child welfare cases, for both parents and children. *See, e.g.*, *OCFS HEARS Family Line*, N.Y. State Off. of Children & Fam. Servs.: Child Welfare and Community Services, https://ocfs.ny.gov/programs/cwcs/hears.php (last visited June 8, 2026) (in 2022, OCFS created a "warmline" that families could call to connect with existing resources; critically, "the HEARS Line intentionally exists outside of traditional child welfare to reduce both the stigma and fear people have about seeking help."); S. Bekaert et al., *Family Members' Perspectives on Child Protection Services, a Metasynthesis of the Literature*, 128 Children & Youth Servs. Rev. 106094, at 9 (2021), https://doi.org/10.1016/j.childyouth.2021.106094 ("There was shame and stigma in being associated with child protection services."). That stigma increases when intersected with potential parental drug use. *See* Allyson L. Dir et al., *Intersecting Stigma of Substance Use and Child Welfare System Involvement: Understanding Stigma Drivers, Experiences, and Outcomes from a Sociological Perspective*, 17 Drug & Alcohol Reps. 100386, at 5 (2025), https://pmc.ncbi.nlm.nih.gov/articles/PMC12547762/pdf/main.pdf ("[Child welfare personnel] and service providers describe parents as untrustworthy and 'dishonest about their use,' explaining: 'everyone knows parents are going to go in and totally deny or make themselves look better than what they are.'" (internal citations omitted)).

Here, the individual Plaintiffs are all facing allegations of neglect, and they challenge an administrative policy that would impact the very proceedings determining whether their children can be in their care and whether they have mistreated their children. The highly sensitive, stigmatizing nature of child neglect and abuse proceedings weighs heavily in favor of anonymity.

5

II.     **Factors 2 and 3: Exposing Plaintiffs' Identities Risks Inflicting the Injury Plaintiffs Seek to Avoid, Including Urination in Front of Strangers and Public Shaming**

Courts often combine these factors, and the Court should do so here. *See, e.g.*, *Jane Doe Esq. v. The Legal Aid Soc'y*, No. 25-cv-2409, 2026 WL 880401, at *3 (S.D.N.Y. Mar. 31, 2026) (analyzing factors 2–3 together); *Does 1-2 v. Hochul*, No. 21-cv-5067, 2022 WL 836990, at *5–7 (E.D.N.Y. Mar. 18, 2022) (analyzing factors 2–4 together). Disclosing the individual Plaintiffs' identities places them at risk of mental harm, including the injury they seek to avoid in this litigation: warrantless searches to which they must consent or risk the emergency removal of, or denial of increased visitation with, their children.

Revealing the individual Plaintiffs' identities in this case would cause psychological harm. It would expose these parents as having open family court cases where they are accused of neglecting their children, which are "serious allegations that may irreparably harm the reputations of" the individual Plaintiffs. *Doe v. Kogut*, No. 15-cv-07726, 2017 WL 1287144, at *12 (S.D.N.Y. Apr. 6, 2017). "[T]he risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Cigna Health & Life Ins. Co.*, No. 25-cv-7021, 2026 WL 21823, at *4 (S.D.N.Y. Jan. 2, 2026) (citing *Doe v. Solera Cap. LLC*, No. 18-cv-1769, 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019)); *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) ("[t]he risk of injury may be physical or psychological"). Moreover, the individual Plaintiffs' children, each innocent non-parties, face their own "risk of … mental harm" when they are revealed to be subjects of neglect petitions. *Doe v. Salina*, No. 23-cv-3529, 2024 WL 1259362, at *2, *4–5 (E.D.N.Y. Mar. 25, 2024) (analyzing the harm to children under factor 2); *see A.C. v. United Healthcare, Inc.*, No. 26-cv-3160, 2026 WL 1243329, at *4 (S.D.N.Y. May 6, 2026) ("the Court is less inclined to impose such a stringent [concrete

6

demonstration of risk] requirement in the specific context of this case, where the purported harms would affect a child rather than an adult").

By challenging courthouse drug testing, the individual Plaintiffs may be seen as the very parents who should be drug tested the most, as the perception may be that plaintiffs would not go through the trouble of resisting drug testing or opposing the implementation of this program without something to hide. Ketteringham Decl., Ex. 4 ¶ 60, Dkt. No. 4-18 (describing how parents will be "exposed as presumed drug users").

Revealing their identities places these parents at a higher risk that judges will request a test: this lawsuit will act as a spotlight in the family court case where their identities are protected. *Id.* ¶ 60 (explaining that "challenging the program" raises the risk "that the judges and parties in [the individual Plaintiffs'] own case[s] will prejudge and determine their ability to have their children in their care on their opposition to [the] program"). At a higher risk of coerced consent, the individual Plaintiffs will also be more likely to face the psychological harms of being forced to urinate in front of courthouse personnel and endure the stress and potential public shaming of announcement of their drug test results in open court. *See*, *e.g.*, Pl. 1 Decl. ¶ 8 ("I felt humiliated when the Judge asked me to drug test during court appearance. I felt as though I was being labeled as an alcohol abuser in front of people I know. I felt stigmatized in open court."); Pl. 2 Decl. ¶ 13 ("It would be humiliating to have to pee in the place where I go to court, in front of a court officer."); *see also* Sonera Decl., Ex. 6 ¶¶ 19–21, Dkt. No. 4-20 (describing how parents were required to urinate while "accompanied by court staff who were required to directly observe their stream of urine, which required them to be very close to their genitalia," including when they were menstruating, and explaining how these experiences have made parents feel "too sad or embarrassed to speak for themselves"); Hill Decl., Ex. 9 ¶¶ 16, 23, Dkt. No. 4-23 (social

worker recounting that parents expressed "embarrassment" and "humiliation" at being required to test); Testing Protocol, Ex. 16 at 3, Dkt. No. 4-30 (testing protocol requiring that "[t]he collector must observe the stream of urine entering the specimen cup," and that "[u]nder no circumstances should the individual being screened be left alone during the collection process").

Even if the family court judge does not request a test, another party may. Publicizing the names of the individual Plaintiffs will alert third parties to their challenge. *See Doe v. Smith*, 105 F. Supp. 2d 40, 45 (E.D.N.Y. 1999) ("courts have allowed plaintiffs to proceed anonymously where disclosure of their identities created a risk of harm from third parties unaffiliated with the case"). The state, attorneys for children, other caregivers, and even foster parents may push for increased surveillance and additional conditions on the individual Plaintiffs challenging an administrative program that many non-lawyers may see as the ends justifying the means. *Cf.* Pl. 1 Decl. ¶¶ 7–9 (recounting that, during their first family court case, the judge asked them to test "in front of a lot of lawyers, a court officer, [their child's other parent], and the friends [the other parent] brought to court," and that they could "recall [the other parent] laughing . . . when the Judge asked me to take a drug test").

Finally, forcing the individual plaintiffs to disclose their names would likely have a chilling effect on similarly situated future litigants. *See, e.g.*, *Colgate Univ.*, 2016 WL 1448829, at *3 ("The Court is also mindful of the potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations.") (plaintiff challenged his suspension by the university after an investigation that he sexually assaulted three other students); *Doe v. St. Vincent's Servs., Inc.*, No. 20-cv-6215, 2021 WL 7909266, at *3 (E.D.N.Y. Sept. 29, 2021) (recognizing that "[b]y requiring Plaintiff to disclose his HIV status, the Court risks chilling others who face discrimination based on their highly stigmatized characteristics

from seeking judicial relief[,]" and allowing anonymity (internal quotation marks omitted and alterations adopted)). Family court investigations, particularly in cases where the state is accusing parents of neglecting or abusing their child, concern one of the most intimate areas of life. Without anonymity, parents in such situations are unlikely to challenge family court administration in the future.

### III.    Factor 4: Exposing Plaintiffs' Identities Would Undermine Privacy of Their Minor Children

Because publication of the names of plaintiffs—parents of children who are subject to neglect cases in family court—will by implication completely undermine privacy protections granted to these children, factor four weighs heavily in favor of anonymity. Courts regularly anonymize the identities of parent-plaintiffs when doing so is necessary to prevent exposure of a minor child's identity. *See, e.g.*, *Smith v. Edwards*, 175 F.3d 99, 99 n.1 (2d Cir. 1999) (anonymizing plaintiff to protect minor child's identity where plaintiff faced sexual abuse allegations); *P.M. v. Evans-Brant Cent. Sch. Dist.*, No. 08-cv-168A, 2008 WL 4379490, at *3–4 (W.D.N.Y. Sept. 22, 2008) ("the protection afforded to the minor would be eviscerated unless the parent was also permitted to proceed using initials"); *Doe v. Salina*, 2024 WL 1259362, at *7 (allowing parent plaintiffs to proceed anonymously, in part, to protect minor children's identities, when parents advocated against school's policies related to COVID-19); *Doe 1 v. Starpoint Cent. Sch. Dist.*, No. 23-cv-207, 2023 WL 2752509, at *2–4 (W.D.N.Y. Apr. 3, 2023) (*sua sponte* permitting plaintiff-parents to proceed anonymously in suit alleging school district disciplined students based on false allegations of misconduct and noting that "identifying the plaintiffs poses a possible risk to both the plaintiffs and innocent non-parties, particularly because the allegations involve high school students" (internal quotation marks and citations omitted)).

9

The Plaintiffs challenge an administrative policy that impacts the decisions made in cases determining whether their child has been neglected or abused. The publication of the Plaintiffs' identities will expose their children, because the context of the challenge has everything to do with their children. Factor four weighs in favor of anonymity, to ensure that parents and children in the child welfare system are not forced to reveal their identities.

IV.    **Factor 5: Government Defendants Have Minimal Concern for Reputational Harm**

"[A] plaintiff's interest in proceeding anonymously is considered particularly strong" in cases challenging governmental activity. *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) (where a government policy is challenged, "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant"); *see also Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264, 275 (E.D.N.Y. 2015) (holding plaintiffs challenging government policy provided a "public interest in the vindication of their rights"). A plaintiff's interest in proceeding anonymously in litigation challenging government activity is strong because "a challenge to governmental policy ordinarily implicates a public interest and the government has less of a concern with protecting its reputation than a private individual." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006).

Plaintiffs challenge a court administered program that poses a high risk of violating their Fourth Amendment rights. *Freedom from Religion Found., Inc. v. Connellsville Area Sch. Dist.*, No. 12-cv-1406, 2013 WL 2296075, at *2 (W.D. Pa. May 24, 2013) ("there is a substantial public interest in ensuring that litigants not face such retribution in their attempt to seek redress for what they view as a Constitutional violation."). Parents asserting rights against a government's actions in sensitive child welfare proceedings vindicate not only the rights of themselves and other parents facing abuse and neglect allegations, but also the general public's

10

interest in ensuring that these critical proceedings are constitutionally sound. Thus, factor five strongly weighs in favor of anonymity.

## V.       Factor 6: Defendants May Access Plaintiffs' Identities Through Discovery

Subject to a protective order, Plaintiffs do not oppose revealing their names to the individual Defendants. When government defendants can access a plaintiff's identity for purposes of discovery, they cannot credibly claim any prejudice. *Cnty. of Suffolk*, 138 F. Supp. 3d at 277-78. Courts have thus repeatedly approved the use of pseudonyms where plaintiffs agree to (confidentially) provide their names to defendants for discovery purposes. *See, e.g.*, *R.F.M.*, 365 F. Supp. 3d at 372; *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001); *Kolko*, 242 F.R.D. at 198; *Doe v. Smith*, 105 F. Supp. 2d at 44–45; *Doe v. Gooding*, No. 20-cv-06569, 2022 WL 1104750, at *5 (S.D.N.Y. Apr. 13, 2022); *Doe on behalf of Doe No. 1 v. Nygard*, No. 20-cv-6501, 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020). Thus, factor six weighs in favor of anonymity.

## VI.      Factor 7: Plaintiffs' Identities Have Been Kept Confidential

Plaintiffs' identities have thus far been kept confidential. Plaintiffs have not spoken publicly about this case or filed any documents that reveal their identities, and they do not intend to do so as this litigation ensues. *See* Pl. 1 Decl. ¶¶ 14–15 (affirming, in declaration with their identity redacted, that they have not spoken publicly about this case or their family court case); Pl. 2 Decl. ¶ 15 (same). While the Plaintiffs' individual names are available to the family court and litigants in the family court case, this information is not available to the public. *See* N.Y. Fam. Ct. Act § 166. Accordingly, the seventh factor weighs in favor of continuing to shield the Plaintiffs' identities.

11

**VII.    Factors 8 and 9: There is No Public Interest in Disclosure**

Courts analyze factors eight and nine together, and the Court should do so here. *See, e.g., United Healthcare*, 2026 WL 1243329, at *5; *Doe v. Combs*, No. 24-cv-7973, 2025 WL 1744928, at *4 (S.D.N.Y. June 23, 2025).

Because this is a putative class action, there is an "atypically weak public interest in knowing the litigants' identities." *Sealed Plaintiff*, 537 F.3d at 190 (citation omitted); *see also EW*, 213 F.R.D. at 111 ("[I]n a class action context challenging governmental action, the individual defendant's personal characteristics (such as credibility) are generally not in issue." (citation omitted)). Courts in this Circuit have recognized a minimal public interest in disclosing a class representative's identity where the suit is "highly embarrassing and potentially sensitive and personal." *Malibu Media, LLC v. Doe*, No. 15-cv-1862, 2015 WL 4271825, at *3 (S.D.N.Y. July 14, 2015); *see also Javier H. v. Garcia-Botello*, 211 F.R.D. 194, 196 (W.D.N.Y. 2002) (internal citations omitted) ("In this Court's opinion, Plaintiffs, at this time, have a substantial privacy interest that outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.").

Moreover, when "a lawsuit is brought solely against the government and seeks to raise an abstract question of law that affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process." *Del Rio*, 241 F.R.D. at 158 (citation omitted).

That is exactly the case here. The Plaintiffs challenge the constitutionality of the courthouse drug testing program, giving the public little interest in their identities beyond the general "presumption in favor of open proceedings." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 321 F.R.D. 31, 35 (D.D.C. 2017) (citation omitted). Without more, "[i]f there is no public interest in disclosure of certain information, something, even a modest privacy interest,

12

outweighs nothing every time." *Horowitz v. Peace Corps.*, 428 F.3d 271, 278 (D.C. Cir. 2005) (internal quotation marks omitted).

## VIII.   Factor 10: There Are No Alternative Mechanisms for Protecting Plaintiffs' Confidentiality

The tenth factor also favors anonymity. Should Plaintiffs' identities be disclosed, there is no mechanism to protect against "sensitive, embarrassing, or other confidential information" being disclosed, as the very fact of the allegations' existence is one of the most sensitive and embarrassing claims a person can encounter. *Doe v. Ithaca City Sch. Dist.*, No. 25-cv-806, 2025 WL 3157792, at *5 (N.D.N.Y. Nov. 12, 2025). Revelation of the individual Plaintiffs' names in this lawsuit will expose that the parents face child maltreatment allegations and that their children are allegedly mistreated. No alternative mechanism would protect against that information being disclosed.

## CONCLUSION

For the foregoing reasons, the Court should permit the individual Plaintiffs to proceed anonymously and permit the individual Plaintiffs to file redacted, anonymous declarations in support of their preliminary injunction and class certification motions.

Respectfully Submitted,

s/Trisha Trigilio
Trisha Trigilio
Anne Venhuizen
Jesse McGleughlin**
Kyle Hogan*
**The Bronx Defenders**
360 East 161st Street
Bronx, New York 10451
Tel: (347) 302-2797
ttrigilio@bronxdefenders.org

s/ Kathleen A. Reilly
Kathleen A. Reilly
Alexander Weaver

13

**Arnold & Porter**
250 West 55th Street
New York, New York 10019-7450
Tel: (212) 836 7450
Kathleen.reilly@arnoldporter.com

Counsel for Plaintiffs


\*Law graduate practicing under supervision of
Trisha Trigilio.

\*\*Application for admission forthcoming.

14

**CERTIFICATE OF COMPLIANCE**
**WITH WORD COUNT LIMITATION**

I certify that this Memorandum contains 3,849 words.

s/Trisha Trigilio
Trisha Trigilio
**The Bronx Defenders**
360 East 161st Street
Bronx, New York 10451
Tel: (347) 302-2797
ttrigilio@bronxdefenders.org

15